# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KEEPER SECURITY, INC. <br><br> Plaintiff, <br><br> v. <br><br> DAN GOODIN and ADVANCE MAGAZINE PUBLISHERS INC. d/b/a CONDÉ NAST and ARS TECHNICA, <br><br> Defendants. | Case No. 1:17-cv-9117 <br><br><br> Hon. Joan Humphrey Lefkow |

## **REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Natalie J. Spears
Gregory R. Naron
Jacqueline A. Giannini
DENTONS US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606
Tel:    (312) 876-8000
Fax:    (312) 876-7934
natalie.spears@dentons.com
gregory.naron@dentons.com
jacqui.giannini@dentons.com

Faced with Defendants' motion to dismiss, Plaintiff has abandoned most of its Complaint's sweeping allegations of what in Defendants' Article purportedly defamed it. Plaintiff does not, and could not, dispute that there was a security vulnerability in Plaintiff's product—in August 2016 and again in December 2017—and that it "was specifically related to Keeper's Browser Extension" (Compl., ECF No. 1, ¶ 41). The existence of the vulnerability is manifest in the fact that Plaintiff admits it had to fix it.

In its radically contracted form, Plaintiff's Complaint now reduces to the assertion that the Article's reference to a "16-month-old-bug" must be read to say that "Keeper had incompetently failed to find the vulnerability for 16 months". (Opposition to Motion to Dismiss ("Opp."), ECF No. 25, p. 1.) The problem for Plaintiff is that the Article says no such thing. In order to contrive that alleged defamation, Plaintiff improperly ignores the Article's actual text and essential context—including hyperlinks to the findings of noted cybersecurity researcher Tavis Ormandy that prompted the Article—which make it clear that Plaintiff fixed both the August 2016 and December 2017 software bugs and that the Article's reference to "16 month-old" is referring to when this kind of vulnerability *first arose* in the browser extension, not its duration. Moreover, this reasonable and innocent construction—that a browser extension vulnerability first surfaced 16 months ago, was fixed, reappeared, and was fixed again—defeats Plaintiff's defamation claim under Illinois law.

Plaintiff's remaining, subsidiary assertions—that the conceded software bugs harmed no users and the "December 2017 and August 2016 issues were not the same or similar"—do not change the Article's substantial truth and innocent construction. Plaintiff's opposition confirms that the Complaint is built on precisely the kind of hairsplitting and tendentious readings that Illinois defamation law forecloses.

Plainly put, Plaintiff has no answer to the controlling legal principles that require dismissal—including that material linked to in the Article must be considered as part of the Article for purposes of this motion—so it simply disregards them and disparages the Article as "click[] . . . bait." (Opp., p. 1.) Plaintiff's insults are no answer to the Article's accurate reporting on a matter of significance to the public and Defendants' readership. That Plaintiff does not like the attention drawn to the conceded flaw in its product does not allow it to chill important cybersecurity research and journalism through strike suits like this.

## I. The Remaining Complaint Allegations Are Unsupported By The Article's Text And Foreclosed By The Source Material That Is Part of Its Essential Context.

In the Complaint, the purported defamation centered on the assertion that the security vulnerability in Plaintiff's product was limited to the Keeper browser extension which had to be "separately installed." (Compl. ¶¶ 41-42.) Not surprisingly, that focus has been completely abandoned. As shown in Defendants' Opening Brief ("Open. Br.", ECF No. 15), the notion that the Keeper browser extension is wholly "separate" from the Keeper software application is simply untenable, because as Plaintiff concedes (Compl. ¶ 6), the browser extension is part of the default installation of the software. Moreover, no greater "sting" is conveyed by the fact that the conceded flaw pertains to one component of Plaintiff's software product instead of another: the fact that the bug resided in the browser extension does not affect the substantial truth that a key component of Plaintiff's product contained a flaw. (Open. Br., p. 8.)[1]

Plaintiff also abandons most of the other alleged defamatory statements identified in the Complaint, acknowledging that to the extent they "refer to Microsoft" or "gave opinions about

---

[1] Plaintiff also demanded that Mr. Ormandy make "multiple changes to [his] report, the crux of [Plaintiff's] concern" being "that they believe the Keeper browser extension is a separate product to their Keeper desktop application". (Ormandy Rept., Cmt. 7 dated 12/17/17, https://bugs.chromium.org/p/project-zero/issues/detail?id=1481&desc=3, cited in Open. Br., fn. 6.) Like Defendants, Ormandy readily debunked the whole "separate products" notion. (*Id.*)

2

Microsoft" they are not "independently actionable by Keeper." (Opp., p. 13; *see* Compl. ¶ 30 stmt. ##1, 3, 4, 5, 8, 9, 10, 11 (statements concerning Microsoft's actions); Open. Br., pp. 12-13.)

Faced with these realities, and a severely contracted Complaint, Plaintiff's defamation claim now essentially consists of the notion that the Article accused Plaintiff of failing "to find the vulnerability for 16 months" and fix it. (Opp., p. 1). But *that is not what the Article says*. The Article accurately reports—and provides supporting hyperlinks to—the discovery of Google security researcher Tavis Ormandy, that there was a vulnerability in the browser extension of Plaintiff's product in December 2017 (ECF No. 15-1), and in a prior iteration 16 months earlier, in August 2016 (ECF No. 15-3). Put simply, Plaintiff cannot make up statements that do not appear in the Article—or ignore the critical links in the Article, and thus its context.

Plaintiff also wrongly asserts that the Ormandy Reports and posts on Plaintiff's own website are "hearsay" that "cannot be credited on a motion to dismiss." (Opp., p. 3.) However, the Article—which is an online publication and is cited in and attached to the Complaint—links to this material. (Compl. ¶ 26 and Exh. 1, ECF No. 1-1.)[2] Under authority that Plaintiff fails to acknowledge, much less address, such linked information must be considered in assessing an alleged defamation on a motion to dismiss, as part of the statements' essential context. *See Doctor's Data, Inc. v. Barrett,* 170 F.Supp.3d 1087, 1132 n. 45 (N.D. Ill. 2016) and cases cited in Open. Br., fn. 7. There is no "hearsay" issue; the Ormandy Reports are not being offered for the "truth" of the Reports, but rather for the fact that *the information contained therein was reported as part of the Article*. For purposes of this motion, the Ormandy Reports are, as a matter of law, an integral part of the Article that Plaintiff attaches to its Complaint and relies upon.[3]

---

[2] The pdf of the Article attached to the Complaint includes hyperlinks to the Ormandy Reports, printouts of which were included with Defendants' brief for the Court's convenience, *see* ECF Nos. 15-1 and 15-3.

[3] The Ormandy Reports themselves link to Plaintiff's website posts, which should also be considered as part of the Article's context. Moreover, "the contents of [Plaintiff's] website may be considered an

3

## II. Plaintiff's Attempt To Give The Article A Defamatory Spin Is Also Foreclosed By The Innocent Construction Rule.

The "defamatory 'sting'" Plaintiff now seeks to highlight is "that Keeper left customers exposed to password theft for 16 months." (Opp., p. 5.) However, as noted above, the Article nowhere says that there was a bug in Plaintiff's software that Plaintiff did nothing to remedy for 16 months. That is Plaintiff's own spin or innuendo—and it is foreclosed by the Illinois innocent construction rule.

In determining whether words are capable of an innocent construction, the Court cannot rely on innuendo to give the words a defamatory meaning. *Bruck v. Cincotta,* 56 Ill.App.3d 260, 265 (1977); *Glassman v. Met. Life Ins. Co.*, 616 F. Supp. 145, 147 (N.D. Ill. 1985). Rather, the Court must look at the words "stripped of innuendo, the meaning taken not only from the words but also from the context of the statement." *Audition Div., Ltd. v. Better Busin. Bureau, Inc.,* 120 Ill.App.3d 254, 256 (1983). That means the *entire* article must be considered. A "headline" or other singular statement cannot be read in isolation. *Kapotas v. Better Gov't Ass'n*, 2015 IL App (1st) 140534, ¶ 57; *Salamone v. Hollinger Int'l, Inc.,* 347 Ill.App.3d 837, 841 (2004) ("headline and news report to which it refers must be considered together").

Yet, that is what Plaintiff wants to improperly do. The "sub-headline" Plaintiff complains of "Win 10 Version of Keeper has 16-month-old bug allowing sites to steal passwords" and the statement that a "critical vulnerability" in Plaintiff's product was "disclosed

---

admission of a party-opponent, and are not barred by the hearsay rule." *Telewizja Polska USA, Inc. v. Echostar Satellite Corp.*, No. 02-cv-3293, 2004 WL 2367740, *5 (N.D. Ill. Oct. 15, 2004). Plaintiff does not dispute the authenticity of its website posts or its admissions therein about Ormandy's findings (nor could it) and they are additionally the proper subject of judicial notice on this motion. *See Camasta v. Omaha Steaks Intern., Inc.*, No. 12-cv-08285, 2013 WL 4495661, *5 (N.D. Ill. Aug. 21, 2013) (Lefkow, J.) (judicially noticing website printouts over authenticity objection where opponent "does not contend that the exhibits do not accurately represent the contents of the website on the day the printouts were made"); *Shen Wei (USA) Inc. v. Sempermed, Inc.,* No. 05-cv-6004, 2007 WL 328846, *3 n. 3 (N.D. Ill. Jan. 30, 2007) (for purposes of motion to dismiss, "a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination") (citations omitted).

16 months ago" both are subject to an innocent construction. (Compl. ¶ 30; Opp., pp. 1, 4, 11.) The Article's text itself explains that there was a "non-bundled" version of Keeper in August 2016, and a version "bundled" with Microsoft's Windows 10 in December 2017, and Ormandy discovered a "critical vulnerability" in each version. (Article, Compl. Exh. 1.)

Furthermore, the Article was expressly reporting on the Ormandy findings and linked to both the August 2016 and December 2017 Ormandy Reports—which not only state that Plaintiff had indeed fixed both the August 2016 and December 2017 bugs, but link to Plaintiff's 2016 website posts giving Plaintiff's view of the problem and the 2016 fix. (Compl. ¶ 26, and Exh. 1.)[4] Indeed, Plaintiff concedes that the Ormandy Reports (and Keeper's posts therein) to which the Article links conclusively refute their reading of "16-month-old bug": "*Mr. Ormandy's earlier post in August 2016 states clearly that the problem he found on August 26, 2016 ... had been fixed by August 28, 2016*" and "Keeper's August 26, 2016 blog post … states that the August 2016 issue had been resolved immediately". (Opp., pp. 9-10.)[5]

Accordingly, when read in context, including this linked material, the Article makes clear that users were *not* vulnerable for 16 months and Keeper did nothing. Defendants reported, and readers knew, through these links, *exactly what Plaintiff posits as the true facts*. The links "enabl[ed] readers to examine the sources for themselves and consider the comments in context." *McKee v. Cosby*, 874 F.3d 54, 64 (1st Cir. 2017) (affirming dismissal); *Boley v. Atl. Monthly Grp.*, 950 F.Supp.2d 249, 262 (D.D.C. 2013) (hyperlink incorporated prior article by reference,

---

[4] Further, as Plaintiff says, Mr. Ormandy "explore[s] unidentified 'vulnerabilities'" in software and shares them privately with the relevant software vendor; "[o]nce a vendor resolves an issue, Google makes the relevant database entry public." (Opp., p. 3.) Thus, it is understood that the Ormandy posts that the Article reports on and links to are only public because the issues identified *have been resolved*.

[5] Plaintiff asserts that "[t]he August 2016 facts fall outside the Complaint" (Opp., pp. 3-4), but of course its Complaint allegations (and attached Article) *made* the "August 2016 facts" relevant, and the Article's links to the August 2016 and December 2017 Ormandy Reports are essential context for the defamation claim Plaintiff purports to plead.

5

"providing the necessary context for the allegedly defamatory remark").

Thus, Plaintiff's assertion that "the Article's false statements, in context, permit only one, false, interpretation: Keeper had left its customers exposed to password theft for 16 months" (Opp., p. 11) could not be more wrong. Again, the Article's text and context both not only utterly refute any reading of the Article as describing a continuous unaddressed bug, but present an alternative, reasonable innocent construction—that a browser extension vulnerability first surfaced 16 months ago, was fixed, the same or a similar problem reappeared, and was fixed again. Plaintiff must rewrite (or ignore) what the actual Article (and linked material) says in order to create a false and defamatory construction. That is the opposite of a reasonable construction of the Article, and even if it were, no "balancing" of constructions is allowed. *Lott v. Levitt*, 556 F.3d 564, 568 (7th Cir. 2009) (courts do not "weigh the relative value of competing constructions; instead, any reasonable, nondefamatory interpretation is the one that sticks").

### III. Plaintiff's Attempt To Quarrel Over The Word Vulnerability Or How Similar Its Two Bugs Were Does Not Create An Actionable Defamation.

With no legal basis for founding a defamation claim on the "16 month old bug" statement, Plaintiff seeks to avoid dismissal by quibbling over the word "vulnerability" and attempting to create a controversy over the degree of similarity between its August 2016 and December 2017 bugs. The innocent construction and substantial truth defenses bar those gambits.

Plaintiff contends that, by stating that the admitted vulnerability "allowed sites to steal passwords," the Article somehow defamed it because the "software issue was nothing more than a *potential* vulnerability" and no "users were exposed to stolen passwords." (Opp., pp. 1, 5.) Plaintiff could not possibly be certain that "the potential vulnerability did not expose any Keeper customer to stolen passwords" (*id.*, p. 5) but in any event the Article *nowhere says it did*.[6]

---

[6] Likewise, the Article nowhere says "that Windows 10 computers automatically have the Keeper 'bug'" (Opp., p. 12); the Article in fact explicitly states that they *aren't* "automatically" infected. (Open. Br., 8.)

The dispositive point, which Plaintiff ignores, is that a security "vulnerability" is *by definition* "potential"—*i.e.*, it requires a malicious actor to take advantage of it—and it is entirely accurate to say that such vulnerability would "allow" malicious actors to "steal" passwords. (*See* Open. Br., pp. 10-11.) "Where the plaintiff's own characterization is not substantially different from the allegedly defamatory language, such language may be deemed substantially true." *Harrison v. Chi. Sun-Times, Inc.*, 341 Ill.App.3d 555, 563 (2003). The defamatory inference Plaintiff draws from the Article's true report on the Keeper vulnerability "cannot be the basis for liability." *Parker v. Bank of Marion*, 296 Ill.App.3d 1035, 1038 (1998) (where plaintiff was "fired for touching women," inference that he was fired for "sexual harassment" was not basis for liability). And the innocent construction rule also forecloses Plaintiff's strained reading, since "the common usage" of "vulnerable" already incorporates the "potential" concept that Plaintiff thinks needed to be spelled out. *Harrison*, 341 Ill.App.3d at 570; *see* Open. Br., fn. 11.

Plaintiff also pronounces that it "does not agree that the issues in the August 2016 documents are the same or similar" to the December 2017 issues (Opp., p. 4) but nowhere explains why that is. Plaintiff's attempt to quarrel about this point is an irrelevant sideshow.

First of all, the Article accurately reports Ormandy's finding in his December 2017 Report that "[w]ith only basic changes to 'selectors,'" the same test attack ("the old proof-of-concept exploit") he conducted in August 2016 "worked on the [December 2017] version" of the product. (Article, Compl. Ex. 1.) The Complaint *nowhere alleges that these statements are false and defamatory* (*see, e.g.*, Compl. ¶ 30)—because they are not.

In any event, any unpleaded and unexplained lack of similarity between the August 2016 and December 2017 vulnerabilities would not affect the purported defamatory "sting." As shown above, the Article does *not* say that the August 2016 bug went unaddressed for 16 months. That being so, no greater sting would exist if the two bugs were—on some entirely

7

hypothetical basis unidentified by Plaintiff—somehow "different." That is the essence of an "item[] of secondary importance . . . immaterial to the truth of the defamatory statement." *Vachet v. Central Newsp., Inc.*, 816 F.2d 313, 316 (7th Cir. 1987).[7]

Hence, for purposes of this motion, it is not necessary for this Court to resolve exactly how "similar" the two bugs are. But moreover, even if it were, Plaintiff's admissions foreclose the inquiry. It does not and cannot dispute that in addition to implicating the same component, the nature of the vulnerability Plaintiff was required to fix was similar if not the same—according to Plaintiff's own website announcements:

- "On Dec 14 2017, Tavis Ormandy (a highly-respected security researcher at Google) contacted us about a potential vulnerability in our browser extension update" that "fakes user input by using a malicious code injection technique to execute privileged code within the browser extension." (12/15/17 Keeper website post, ECF No. 15-2.) In order to resolve the issue, Plaintiff issued a browser extension update. (*Id.*.)

- 16 months earlier, in August 2016, Plaintiff also "updated [its] Keeper Browser extension" in response to the vulnerability identified by the "highly-respected security analyst at Google" Mr. Ormandy. As with the later December 2017 issue, the browser extension had to be "updated" to "mitigate the possibility" of a malicious attack "during a browser session." (8/28/16 Keeper website post, ECF No. 15-4.)

- Thus, both the August 2016 and December 2017 bugs "related to a security threat that could potentially be exploited" by an online attack while using the browser extension." (*Id.*)

Thus, *by Plaintiff's admission*, there was a vulnerability in its browser extension's August 2016 and December 2017 iterations, both of which allowed malicious attacks while using a

---

[7] Plaintiff's assertion that "Mr. Ormandy's view of the similarity of two issues is not controlling on a motion to dismiss" (Opp., p. 10) is beside the point for the additional reason that his "view" is protected opinion based on facts disclosed in the Ormandy Reports—*i.e.,* Ormandy "showed his work" by providing examples of how an attack on Plaintiff's system would allow an untrusted webpage to get a Keeper user's password and concluded that "the same attack work[ed]" on both the August 2016 and December 2017 versions of the browser extension. (12/17 Ormandy Rept., ECF No. 15-1; 8/16 Ormandy Rept., ECF No. 15-2.) Readers can examine the test attacks and determine for themselves if Mr. Ormandy's assessment is accurate. *Mittelman v. Witous*, 135 Ill. 2d 220, 242 (1989); Restatement (Second) of Torts, § 566, cmt. d ("pure opinion" based on disclosed facts not actionable); *see* Open. Br., pp. 12-13. It was not actionable for Defendants to report Ormandy's views in the Article.

8

browser, and required Plaintiff to issue a fix to avoid exposing user passwords. Plaintiff's "dispute" about the bugs' "similarity" is a sham.

All in all, the admitted security vulnerability in the August 2016 and December 2017 iterations of Plaintiff's product is unchallenged by the Complaint or Opposition. Plaintiff's assorted attempts to put a defamatory gloss on that truth are foreclosed by innocent construction and substantial truth.[8]

## IV. Plaintiff Is A Public Figure And Cannot Plead Actual Malice As A Matter Of Law.

Plaintiff's "bare conclusory claim of malice" is "insufficient to survive a motion to dismiss." *Pippen v. NBC Univ. Media,* No. 11-cv-8834, 2012 WL 12903167, *2 (N.D. Ill. Aug. 2, 2012), *aff'd*, 734 F.3d 610 (7th Cir. 2013). Plaintiff does not address that failure and instead simply repeats its faulty interpretation of how it thinks the Article defamed it. (Opp., pp. 14-15.) But the actual malice rule *assumes* a false and defamatory statement; what Plaintiff must adequately plead is facts showing how Defendants *entertained serious doubts as to the truth of the Article prior to publication. New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964); *Pippen*, 734 F.3d at 614. The Complaint is concededly bereft of any such pleading.

The truth is, Plaintiff *cannot*, as a matter of law, plead facts that would meet that constitutional actual malice standard. Plaintiff argues "the sources"—*i.e.,* Mr. Ormandy—"do not support" the Article, but as shown *supra*, the Article not only accurately described but linked to

---

[8] Plaintiff does not dispute that the defamation law principles discussed herein "apply equally" to its tag-along "commercial disparagement" and Deceptive Trade Practices Act claims (Opp., p. 14); however, its assertion that the Article is "commercial speech" (*id*., p. 15) betrays a misunderstanding of what that means. In contrast to the case Plaintiff cites, Defendants' speech about "Keeper's products" was not for a competitor's "advertising, marketing, and promotional" purposes, *Daniels Sharpsmart, Inc. v. Becton, Dickinson & Co.*, No. 15-cv-9677, 2016 WL 1073096, *3 (N.D. Ill. Mar. 18, 2016); it was journalism fully protected by the First Amendment. *See, e.g., Commodity Trend Service, Inc. v. C.F.T.C.*, 149 F.3d 679 , 684-86 (7th Cir. 1998) ("speech does not become 'commercial' simply because it concerns economic subjects or is sold for a profit"; financial publisher's publications were not commercial speech).

9

the actual Ormandy findings, the substance of which Plaintiff does not challenge.[9] The existence of a source in a "position[] of authority and knowledge regarding the incident at issue . . . completely ends this matter" and is the "strongest defense possible to claims of *New York Times* malice"; even if "everything [defendant] wrote in the article regarding plaintiff was *completely* false, plaintiff's complaint would rest with [defendant's] *sources,* not [defendant]." *Martin v. State Journal-Register*, 244 Ill.App.3d 955, 963 (1993) (italics in original).

Plaintiff denies it is a public figure to whom the standard applies, but the Complaint admits Plaintiff is an industry "innovator and leader" with a huge subscriber base and global reach (Compl. ¶¶ 3, 7); as the Seventh Circuit has observed, "if the purpose of the public figure-private person dichotomy is to protect the privacy of individuals who do not seek publicity or engage in activities that place them in the public eye, there seems no reason to classify a large corporation as a private person." *Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 273 (7th Cir. 1983), *on remand*, 644 F. Supp. 1240, 1247 (N.D. Ill. 1986) (company was a public figure because of its advertising and sale of goods), *rev'd on other grounds*. Plaintiff also asserts that it did not "sufficiently interject[] its position on the controversy into the public realm" to qualify for public figure status. (Opp., p. 14.) But a plaintiff is a limited purpose public figure if it "voluntarily injects [itself] or is drawn into a particular public controversy[.]" *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). Here, Plaintiff not only was drawn into, but aggressively engaged in, the dispute over whether its product is vulnerable to hacking, seeking "to influence the resolution of the issues involved" by making public statements touting Keeper's security, reacting to the August

---

[9] It is noteworthy that Plaintiff does not name Mr. Ormandy as a defendant in this action. Plaintiff's public announcements rightly describe him as well-respected security expert and one can only assume that challenging the truth of Mr. Ormandy's findings—including his test attacks that worked on both the August 2016 and December 2017 versions of Plaintiff's product—was too daunting.

2016 finding, and trying to influence Mr. Ormandy's further research and statements on the subject.  *Id*. at 345.[10]  Plaintiff is without doubt a limited purpose public figure.

## **CONCLUSION**

Defendants respectfully request that the Court dismiss the Complaint with prejudice.

Dated: March 21, 2018                                          Respectfully submitted,

                                                                                     /s/ Natalie J. Spears
                                                                                     One of the attorneys for Defendant

---

[10]  *See, e.g., Cooley Law School v. Kurzon Strauss, LLP*, 759 F.3d 522, 530-31 (6th Cir. 2014) (plaintiff "voluntarily injected itself into the public debate" by, *inter alia,* "publicly responding to the question 'whether law schools in [Michigan] are churning out too many grads'"; it had "access to channels of effective communication to express its position" and used them "to disseminate its message that the critics do not have their facts straight").

11

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** was filed with the Clerk of the Court on March 21, 2018 by using the CM/ECF system, which will send a notice of electronic filing to all registered users.

/s/ Natalie J. Spears